■ JACK W. HARTMAN, III, Doing Business as HARTMAN BUILDING & CONSTRUCTION Co., et al., Appellants, v ALLEN R. TRAVIS et al., Respondents. — Appeal from an order of the Supreme Court at Special Term, entered September 10, 1980 in Broome County, which granted a motion by defendants Allen R. Travis and Nancy L. Travis for summary judgment dismissing the complaint. On September 26, 1978 defendant Allen R. Travis entered into a written contract with defendant Larry Medlar, doing business as L &- M

Development Corporation, for the construction of a house on property owned by Allen R. Travis and his wife, defendant Nancy L. Travis, on Robinson Street in the City of Binghamton, New York. Medlar then hired plaintiff Jack W. Hartman, III, doing business as Hartman Building & Construction Company, to do excavation and construction work on the project, and Hartman subcontracted plumbing work on the project to plaintiff Frank Bocinski. Both plaintiffs thereafter performed labor and furnished materials at the building site during which time a question arose as to whether the foundation of the proposed house was being constructed partly on land not owned by the Travises. Ultimately, plaintiffs' work at the site ceased during June of 1979, and Allen R. Travis paid Medlar the sum of $1,725 in connection with their contract. In return, on July 3, 1979, Medlar gave Allen R. Travis a general release from all claims relative to the contract. With these circumstances prevailing and plaintiffs not having been paid for the labor and materials which they had provided, Bocinski filed a notice of mechanics' lien against the property on July 24, 1979 and Hartman filed a similar notice on July 26, 1979. Subsequently, they instituted an action to foreclose the liens against Medlar and the Travises, and in November of 1979 their motion for summary judgment was granted as against Medlar, but denied as against the Travises. Later Special Term granted the Travises' motion to dismiss summarily plaintiffs' complaint as against them, and from this dismissal order plaintiffs now appeal. We hold that Special Term's order should be reversed. In so ruling, we initially note that the court in its decision mistakenly suggests that plaintiffs have no cause of action against the Travises because they had no contractual relationship with them. Under section 3 of the Lien Law, resort to a mechanics' lien can be had in a proper case absent any contractual privity (Jenkins Contr. Co. v Sixth Ave. & 57th St. Corp., 282 App Div 662, mot for lv to app den 306 NY 980). Such being the case, the factual issue presented as to whether or not the Travises consented to the work done by the plaintiffs, i.e., did the Travises instruct plaintiffs to stop construction upon discovering the alleged incorrect placement of the foundation, would seem to mandate a reversal of Special Term's grant of summary judgment. By itself, however, this issue is insufficient to warrant reversal of the court's ruling because of the general release from all claims under the contract obtained by Allen R. Travis from Medlar on July 3, 1979. A mechanics' lien will attach only to funds due and owing to the general contractor at the time of its filing or which may thereafter become due and owing (Albert J. Bunce, Ltd. v Fahey, 73 AD2d 632), and in this case the liens at issue were not filed until July 24 and 26, 1979, at which time, as a result of the release, there was no sum due and owing to the general contractor to which the lien could attach. Under these circumstances, it is plaintiffs' additional assertion that the general release was a product of collusion between Medlar and the Travises which renders the grant of summary judgment to the Travises improvident. As noted above, the Travises were granted the release by Medlar in return for payments totaling $1,725, and it is plaintiffs' contention that this arrangement was made between the parties thereto for the purpose of evading the provisions of the Lien Law and denying plaintiffs payment for the labor and materials which they had provided at the construction site. If this allegation can be proven by plaintiffs, the release in question would then have no effect upon their respective liens (Lien Law, § 7; Comfort-Craft Heating & Air Conditioning v Salamone, 19 AD2d 760), and there is some evidentiary support in the record for plaintiffs' position. Most notably, plaintiffs point to the small payment made by the Travises for the release, despite the fact that the

actual improvements to the property by plaintiffs alone allegedly totaled more than $7,000, as evidence that the release may have been a collusive mechanism to defraud plaintiffs. Also, Medlar's filing for bankruptcy in May of 1980 is a further indication that the release may well have been executed in an attempt to defraud plaintiffs. In our judgment, sufficient factual issues have been raised by these allegations so that the summary dismissal of the complaint herein cannot be permitted to stand and this matter must be remitted for trial (cf. *Barr v County of Albany,* 50 NY2d 247). Order reversed, on the law, and matter remitted for trial, with costs to abide the event. Kane, J. P., Main and Weiss, JJ., concur.

Mikoll and Yesawich, Jr., JJ., concur in part and dissent in part in the following memorandum by Yesawich, Jr., J. Yesawich, Jr., J. (concurring in part and dissenting in part). We differ only with respect to the majority's conclusion that a triable fact issue exists as to whether the release was collusively obtained. To infer collusion requires some factual showing, not merely plaintiffs' speculation that the Travises knew Medlar was in financial difficulty when the release was given. There is no such evidence. In fact, Medlar's bankruptcy did not occur until some 10 months after the release was executed. We would affirm.