917 F.2d 1332
 63 Ed. Law Rep. 770
 RURE ASSOCIATES, INC., Plaintiff-Appellant,
v.
DiNARDI CONSTRUCTION CORP., Hartford Accident and Indemnity
Company, and the Board of Education of Bay Shore
Union Free School District, Defendants,
Hartford Accident and Indemnity Company, and the Board of
Education of Bay Shore Union Free School District,
Defendants-Appellees.
 No. 227, Docket 90-7399.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 3, 1990.
Decided Nov. 5, 1990.
 
 Gordon P.R. Posner, Mineola, N.Y. (Steven G. Rubin, Mineola, N.Y., of counsel) for plaintiff-appellant Rure Associates, Inc.
 Daniel Greenberg, Northport, N.Y. (Mark S. Kosak, Ingerman, Smith, Greenberg, Gross, Richmond, Heidelberger & Reich, Northport, N.Y., of counsel) for defendant-appellee the Board of Educ. of Bay Shore Union Free School Dist.
 Joseph D. Stim, Huntington, N.Y. (Stim & Warmuth, Huntington, N.Y.) for defendant-appellee Hartford Accident and Indem. Co.
 Before CARDAMONE, Circuit Judge, and POLLACK, Senior District Judge.***
 MILTON POLLACK, Senior District Judge.
 In this diversity case, Plaintiff Rure Associates, Inc. ("Rure"), a subcontractor, appeals from two partial summary judgments against it rendered in the Eastern District of New York, which (1) dismissed as untimely its complaints asserting a mechanic's lien and a claim of an assumption of liability made against Defendant Board of Education of Bay Shore Union Free School District ("School District"), and (2) dismissed as untimely its claims under a payment bond issued to the contractor by Defendant Hartford Accident and Indemnity Company ("Hartford").
 For the reasons appearing hereinafter, the judgments below exonerating defendants from direct personal liability are affirmed and the judgment dismissing the mechanic's lien against the property of the School District is reversed and that claim is remanded.
 
 Background
 
 1
 Defendant DiNardi Construction Corp. ("DiNardi") entered into a primary contract with the School District for alterations to Bay Shore High School. Hartford supplied a labor and material payment bond for the project under which DiNardi, the contractor, was principal. In July 1984 Rure entered into a subcontract with DiNardi to provide aluminum doors and windows under DiNardi's primary contract with the School District. The subcontract was fixed in the amount of $853,271.00. In March 1986, the School District discharged DiNardi because of alleged poor workmanship. Rure allegedly performed $681,641.00 worth of its work until DiNardi was terminated. As a result of the termination, DiNardi allegedly breached the subcontract with Rure; Rure claims it is owed $182,141.27. Subsequent to DiNardi's discharge, the School District undertook to have the project completed by another contractor. Before thirty days had elapsed after the completion and acceptance of the project, Rure asserted its direct claims and mechanic's lien for work performed.
 
 
 2
 Rure's first claim is against DiNardi for breach of the subcontract (this is not in controversy on this appeal). Rure's second claim is against Hartford under the payment bond issued to the contractor. Rure's third claim is on a mechanic's lien on the public improvement project of the School District. Rure's fourth claim asserts that the payment bond of Hartford covers the mechanic's lien filed against the School District. Rure's fifth claim asserts a direct claim for nonpayment against the School District under the theory that the School District assumed DiNardi's liabilities and obligations, including liability for the work Rure had completed.
 
 
 3
 The School District moved to dismiss Rure's third and fifth claims against it and Hartford moved to dismiss the second and fourth claims against it.
 
 
 4
 By order dated April 4, 1989, the district court converted all motions to motions for summary judgment.
 
 The District Court's Decision
 Fifth Claim
 
 5
 The district court dismissed the subcontractor's direct claim against the School District for untimeliness in the filing of the notice of its claim. N.Y. Education Law Sec. 3813 (McKinney 1981) requires that a notice of claim be filed with the School District "within three months after the accrual of such claim." The district court held that Rure's claim accrued when DiNardi was discharged on March 24, 1986, rather than when the project was completed by the subsequent contractor. The notice of the subcontractor's direct claim, filed more than two years after termination of the original contractor on June 22, 1988, was therefore held to be untimely.
 
 Third Claim
 
 6
 The district court dismissed the mechanic's lien against the School District on the ground that Rure could not maintain a mechanic's lien action against the School District unless it had a direct claim against the School District or alternatively on the ground that the mechanic's lien was untimely filed under N.Y. Lien Law.[1]
 
 Second and Fourth Claims
 
 7
 The district court dismissed the direct claims against Hartford under the payment bond on the ground that the action was untimely commenced. Under Paragraph 3(b) of the payment bond furnished to the contractor, Rure was obliged to commence his action against Hartford within one year "following the date on which the Principal ceased work on said CONTRACT,...." (emphasis in original), and Rure failed to meet this time limitation.
 
 Discussion
 
 8
 Fifth Claim--Direct Claim Against the School District
 
 
 9
 N.Y. Education Law Sec. 3813 requires a claimant to file a notice of claim so as to afford a school district an opportunity to investigate a claim against it. Board of Education of Enlarged Ogdensburg City School District v. Wager Construction Corp., 37 N.Y.2d 283, 290, 372 N.Y.S.2d 45, 49, 333 N.E.2d 353 (1975). Section 3813 requires that such notice be filed by a claimant with the School District, "within three months after the accrual of such claim." The district court ruled that "any claim subcontractor-Rure possessed against the School District accrued at latest on March 24, 1986 [when the subcontractor left the jobsite subsequent to DiNardi's termination on March 14, 1986]." Rure contends that his claim against the School District accrued when the project was fully completed by the second primary contractor.
 
 
 10
 In order for Rure to pursue a direct action against the School District, Rure posed two mutually exclusive alternatives: (1) that the School District stands in the shoes of DiNardi under a theory that the School District assumed the liabilities and obligations of DiNardi; or (2) that Rure stands in the shoes of DiNardi through a derivative claim.[2] The validity of the chosen alternative depends upon the establishment of both (a) timeliness and (b) assumption of status.
 
 
 11
 Under the first alternative, Rure's claim is time-barred. A claim accrues when damages are ascertainable. Acme Skillman Construction Corp. v. Board of Education of New York, 106 A.D.2d 533, 533, 483 N.Y.S.2d 357, 358 (N.Y.App.Div.1984), appeal denied, 65 N.Y.2d 609, 494 N.Y.S.2d 1029, 484 N.E.2d 672 (1985). Rure's damages against DiNardi became ascertainable when Rure left the jobsite on March 24, 1986; consequently, its notice of claim filed on June 22, 1988 was untimely. Since timeliness was not established, we need not reach the issue whether there was an assumption of DiNardi's contractual obligations by the School District.
 
 
 12
 With respect to the derivative claim, Rure does not cite any authority supporting such an argument; it failed to support this alternative as a theory on which a direct claim may be pursued.
 
 
 13
 For the above stated reasons, we affirm the district court's decision dismissing Rure's fifth claim against the School District.
 
 Third Claim--the Mechanic's Lien Claim
 
 14
 Under New York law, a subcontractor must establish that there is money due to a general contractor from an owner based on a primary contract, for the subcontractor to recover under a mechanic's lien against the owner. Brainard v. County of Kings, 155 N.Y. 538, 544-45, 50 N.E. 263, 264-65 (1898); Van Clief v. Van Vechten, 130 N.Y. 571, 577, 29 N.E. 1017, 1018 (1892); Falco Construction Corp. v. P & F Trucking, Inc., 158 A.D.2d 510, 551 N.Y.S.2d 273, 274 (N.Y.App.Div.1990); Bunce v. Fahey, 73 A.D.2d 632, 632, 423 N.Y.S.2d 58, 59 (N.Y.App.Div.1979); Lorber v. Eskof Real Estate, Inc., 21 Misc.2d 308, 311, 194 N.Y.S.2d 766, 769 (N.Y.Sup.Ct.1959). Although there is a contrary allegation in the brief of the School District, for the purpose of an appeal of a summary judgment against Rure, we must assume the facts Rure alleged in its complaint, i.e., that the School District owed DiNardi at least $182,141.27.
 
 
 15
 The district court held that the existence of a direct claim against the School District is a prerequisite to foreclosure of a valid mechanic's lien. This is not a correct statement of New York law. Under New York law, a subcontractor can proceed on a mechanic's lien if there is money due and owing to the general contractor under the primary contract regardless of the existence of contractual privity between subcontractor and the owner. Rainbow Electric Co. v. Bloom, 132 A.D.2d 539, 517 N.Y.S.2d 273 (N.Y.App.Div.1987) (Electrical subcontractor was entitled to recover on its mechanic's lien against owners despite absence of contractual privity.); Hartman v. Travis, 81 A.D.2d 692, 693, 438 N.Y.S.2d 633, 634 (N.Y.App.Div.1981) (Under Lien Law Sec. 3, governing mechanics' liens on real property, resort to a mechanic's lien is permitted absent any contractual privity.). However, consent of the owner for the performance of the labor or the furnishing of materials by the subcontractor is necessary to proceed on a mechanic's lien. N.Y. Lien Law Sec. 3 (McKinney Supp.1990). Consent can be implied. Where the circumstances are such that an owner may be said to have consented so far as the contractor is concerned, the owner is deemed also to have consented to the furnishing of labor and materials to the contractor with the latter's consent. See Wheeler v. Scofield, 67 N.Y. 311, 314 (1876). The parties do not argue whether there was or was not a consent.
 
 
 16
 The district court also erred in holding that Rure did not timely file a notice of mechanic's lien pursuant to New York State Lien Law. The court held that the "question of whether the notice of the mechanics' lien was filed properly is irrelevant. As discussed above [referring to the section of the opinion discussing Education Law Sec. 3813], Rure cannot maintain an action against the School District for the monies it is allegedly owed." It therefore appears that the district court believed that the provisions of the Education Law somehow restrained Rure's exercise of its rights under the Lien Law. The two statutes are addressed to entirely different policies.
 
 
 17
 The Lien Law, which was enacted in 1909, protects small firms and their laborers against nonpayment for their services, and provides a direct cause of action against the property upon which the services were rendered. The Education Law, on the other hand, was intended to protect school districts by giving them definite and ascertainable notice of claims against them. The passage of the Education Law in 1947 cannot be said to have restricted a subcontractor's rights under the Lien Law. While Sec. 3813 provides that "[n]o action or special proceeding, for any cause whatever ... relating to district property or property of schools ... or claim against the district or any such school, or involving the rights or interests of any district or any such school" shall be prosecuted unless the plaintiff has given notice of his claim within three months of its accrual, we do not interpret the term "claim" to include mechanics' liens. Mechanics' liens are filed against property, not school districts. They are not therefore the sort of tort or contract claim to which Sec. 3813 was addressed. The policies of neither statutes are frustrated by this construction. The Lien Law allows a subcontractor thirty days from the acceptance of a project to file a lien, and the School District is able to have definite and ascertainable notice of the lien within thirty days after any construction project is completed and accepted. Cf. Newburgh Nursery, Inc. v. Board of Education of Central School District No. 2, 41 Misc.2d 997, 247 N.Y.S.2d 74 (N.Y.Sup.Ct.1964) (compliance with Sec. 3813 is not a prerequisite to commencement of action to foreclose a mechanic's lien on public improvements, and notice under Sec. 3813 is not required in addition to notice of lien).
 
 
 18
 N.Y.Lien Law Sec. 12 (McKinney Supp.1990) states in relevant part that a notice of a mechanic's lien on public improvement has to be filed "within thirty days after [the] completion and acceptance" of the work by the state or by the public corporation. There is a dispute as to when and if "completion" of the work occurred.
 
 
 19
 The School District argues that for the purpose of Sec. 12, the thirty-day period began to run from the date DiNardi was discharged. In Bader v. City of New York, 51 Misc. 358, 101 N.Y.S. 351 (N.Y.Sup.Ct.1906), however, under facts similar to the present case, the court concluded that where the contractor for a public improvement abandoned the contract and it was completed by the city through another contractor at the expense of the original contractor, the thirty-day period for the filing of a notice of lien by a subcontractor for work under contract with the original contractor began to run from the completion of the work by the city and not from the time of the abandonment by the original contractor. 51 Misc. at 360-61, 101 N.Y.S. at 353. This is precisely the situation in the present case wherein the School District hired another contractor to complete the work and has attempted to charge back to DiNardi an alleged overrun to complete.
 
 
 20
 Moreover, under the primary contract, the amount of money due to DiNardi from the School District to which Rure's mechanic's lien claim attaches cannot be ascertained until the completion of the work. Under Article 14.2.1 of the primary contract, if a contractor (DiNardi) is terminated for cause the contractor may be entitled to further payment, but not "until the Work is finished." (emphasis in original). Indeed, under Article 14.2.2, the work must be finished in order to determine if the contractor even has a claim, for the contractor is only entitled to the unpaid balance of the contract less the cost to the School District of finishing the work.
 
 
 21
 The School District cites Ferran Concrete Co. v. Avon Electrical Supplies Corp., 128 A.D.2d 527, 512 N.Y.S.2d 459 (N.Y.App.Div.1987), claiming it overruled Bader. However, Ferran is a different case. In that case, the owner terminated the contract for its own convenience and the project ceased entirely on that date. The court in Ferran merely ruled that since the work on the project had ceased, the public improvement was completed within the meaning of Lien Law Sec. 12. In Ferran, the money due to the contractor became ascertainable on the date of the termination.
 
 
 22
 Consequently, we reverse the district court's decision discharging of record the alleged lien and dismissing Rure's third claim thereon and remand that claim for further proceedings in accordance with this opinion.
 
 
 23
 Second and Fourth Claims--Claims on the Payment Bond
 
 
 24
 Paragraph 3(b) of the payment bond in favor of the contractor states in relevant part that "[n]o action shall be commenced hereunder by any claimant ... [a]fter the expiration of one (1) year following the date on which Principal ceased work on said CONTRACT." (emphasis in original). The district court held that DiNardi, the principal under the payment bond, was terminated in March 1986 and subsequent to that date neither DiNardi nor Rure performed any further work under the contract, so no action could be commenced after the expiration of one year following that date. Thus, Rure's filing of its notice of claim against Hartford on September 28, 1988 came too late.
 
 
 25
 Trying to defeat the plain language of the payment bond, Rure argues that, by undertaking to complete the construction work, the School District stands in the shoes of DiNardi, the principal. Rure relies heavily on a single case, Wilson v. Moon, 240 A.D. 440, 270 N.Y.S. 859 (N.Y.App.Div.), aff'd, 265 N.Y. 640, 193 N.E. 423 (1934) in which the court held that the contractor's surety, upon taking over of the contract for construction after contractor's default, stood in the contractor's shoes, so that all moneys earned by the surety in completing the primary contract were subject to claims of laborers and materialmen, regardless of whether cost of completion was greater than the amount received from the Board of Education. Rure contends that the present case parallels this situation and consequently that the School District stands in DiNardi's shoes.
 
 
 26
 The situations, however, are not parallel at all. First, unlike Wilson, here the primary contract was formally terminated. Second, unlike the surety in Wilson, the School District did not promise to assume an obligation to pay lienable claims of laborers and materialmen. Third, what Rure is asserting is that the School District stands on both sides of the primary contract and must pay money to itself to which the subcontractor's claim attaches.
 
 
 27
 Rure also argues, citing Paragraph 4 of the payment bond, that the payment bond covers mechanics' liens and that if a mechanic's lien is filed within the time limitation for liens, then the contractual bond limitation does not control. Paragraph 4 of the bond states:
 
 
 28
 The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.
 
 
 29
 However, this provision is solely for the benefit of Hartford. It permits reduction under the bond, if Hartford elects to pay a mechanic's lien, even though the lienor did not present it as a claim against the bond and even though Hartford is not obligated to pay it. It does not set an exception to Paragraph 3(b) with respect to a mechanic's lien.
 
 
 30
 Finally, Rure's contention, that the date when payment under a claimant's subcontract becomes due has been liberally construed, is totally off the point. The issue here is not the date when payment under the subcontract becomes due but when the "Principal ceased work on said CONTRACT."
 
 
 31
 We accordingly affirm the district court's decision dismissing Rure's second and fourth claims against Hartford.
 
 
 32
 AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.
 
 
 
 *
 Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 **
 The third member of the panel, Honorable Roger J. Miner, recused himself after oral argument
 
 
 [1]
 The reasoning for the district court's holding was: "Rure cannot maintain an action against the School District for the monies it is allegedly owed [because it was not timely filed]. Without a direct cause of action, Rure may not maintain a mechanics' lien against the School District. See New York State Lien Law Sec. 21(7)."
 N.Y.Lien Law Sec. 21(7) (McKinney 1966) states in relevant part:
 Where it appears from the face of the notice of lien that the claimant has no valid lien by reason of the character of the labor or materials furnished and for which a lien is claimed, or where the notice of lien is invalid by reason of failure to comply with the provisions of section twelve of this article, or where it appears from the public records that such notice has not been filed in accordance with the provisions of section twelve of this article, the contractor or any other party in interest, may apply to the supreme court of this state, or to any justice thereof, or to the county judge of the county in which the notice of lien is filed, for an order summarily discharging of record the alleged lien.... The application must be made upon a verified petition accompanied by other written proof showing a proper case therefor, and upon the approval of the application by the court, justice or judge, an order shall be made discharging the alleged lien of record.
 (emphasis added.)
 
 
 [2]
 Rure argued the first alternative in its appeal brief. Rure, however, argues in its reply brief that since its direct cause of action against the School District is derived from DiNardi's claim against the School District for the money due and owing under the primary contract, its alleged direct claim against the School District will only become ascertainable when DiNardi's claim against the School District becomes ascertainable. According to Article 14.2.1 of the primary contract (Joint Appendix p. 124) which states in relevant part that no payment is due from the School District "until the Work is finished," the alleged DiNardi claim accrues when the work is completed. Therefore, Rure argues, the three-month period began to run from the date the work was completed by the School District and thus it did timely file its claim